**Allen G. WILLIAMS, Petitioner,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. Civ.A.05–1519.**

United States District Court, E.D. Pennsylvania.

Nov. 21, 2005.

---

James B. Konieczny, West Chester, PA, for Petitioner.

Eda Giusti, David F. Chermol, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Petitioner Allen G. Williams brings suit against Jo Anne B. Barnhart, in her capacity as Commissioner of the Social Security Administration, seeking review of an administrative denial of supplemental security income benefits ("SSI"). Petitioner argues that the denial issued by an Administrative Law Judge ("ALJ") was not supported by substantial evidence and therefore should be reversed. Now before the court are Petitioner's and Defendant's cross-motions for summary judgment. This court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, Petitioner's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

### I. Factual Background

At the time SSI application on his behalf, Petitioner was 17 years old; at the time of the ALJ's decision, he was 18 years old (Record at 15). Petitioner is obese, weighing 276 pounds at five feet, three inches tall. *Id.* He does, however, play sports during gym, attend church, and help his parents with household chores (Record at 117, 164). He appears to have no difficulty sitting, standing, walking, using his hands, writing, understanding, talking, or answering coherently (Record at 102).

Petitioner suffers from obstructive sleep apnea related to his obesity and has reported difficulty falling asleep as well as staying awake during school (Record at 19, 147, 168). At the time of the ALJ's decision, he had commenced continuous positive airway pressure treatment (CPAP) under the care of a physician; CPAP was found to be effective in controlling his sleep apnea (Record at 147, 154). Petitioner suffers from seasonal allergies, but is not under any regular medical treatment (Record at 126–27; 156).

At the time of the ALJ's decision, Petitioner was enrolled in 12th grade as part of an Individualized Education Program (IEP) at his high school (Record at 23).[1] School records show that Petitioner struggled to focus in class and frequently failed

---

1. IEP appears to be a learning support program designed for students requiring assistance outside of mainstream classes. Record 62–78; 172–174.

to complete homework assignments (Record at 17). Testing in 10th grade indicated that he performed at a second-grade level in mathematics and most reading subtests.[2] *Id.* While Petitioner can be distracted and slow to respond, he can keep pace with other students in some tasks and completes many without support most of the time (Record at 120). A consultative psychological examination in November 2003 found Petitioner to have a Verbal IQ of 766, a Performance IQ of 78 and Full Scale IQ of 75 (Record at 18).

## II. Procedural Background

On August 28, 2003 Petitioner's father filed an application for SSI benefits, alleging that Petitioner is disabled by a learning disability and sleep apnea (Record 17, 47). The Social Security Commissioner's state agency denied his application, and Petitioner requested a hearing before an ALJ, which was held on September 30, 2004 and at which Petitioner's mother and father testified (Record 158). In an October 29, 2004 opinion, the ALJ found that Petitioner was not disabled under the Social Security Act (the "Act")(Record 12–24). The Appeals Council affirmed the ALJ's decision on February 4, 2005 (Record 4). Petitioner then filed his complaint, requesting judicial review, on April 4, 2005. Defendant filed an answer on May 9, 2005.

## III. Standard of review

In reviewing an administrative decision denying benefits in a social security matter, the court must uphold any factual determination made by the ALJ supported by "substantial evidence." 42 U.S.C. § 405(g). While substantial evidence is not a "large or significant amount of evi-

dence," it is "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted); *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotations omitted). Rather, it is such relevant evidence that would be sufficient to support a reasonable conclusion. *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. Even if the court would have decided the case differently, the statute requires deference to the ALJ's findings of fact so long as those findings are supported by substantial evidence of record. *Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir.1986).

On September 11, 2000, the Social Security Administration published new rules relating to childhood disability cases. *See* 65 Fed.Reg. 54, 747. Effective January 2, 2001, the new rules applied to claims pending at any stage of the administrative process. 65 Fed.Reg. 54, 751. Because Petitioner was underage at the time his father applied for benefits on his behalf, but was of age at the time of the ALJ's decision, the ALJ applied both the new childhood rules and the long-standing adult rules when evaluating this case (Record at 16). 20 C.F.R. § 416.924(f).

According to 20 C.F.R. § 416.924(a)-(d), the ALJ must perform a three-step analysis in reviewing applications for children's disability benefits under the Social Security Act. The steps are, in short, (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a impairment or combination of impairments that is "severe"; and (3) if so, whether the child's impairment or combination of impairments medically or functionally meets or equals the severity of an impairment in the Act's disability listings.[3]

---

**2.** Petitioner's father reported that his son's reading, writing and mathematic skills were at the fourth- or fifth-grade level (Record at 115).

**3.** Under the Act, an individual is determined to be disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physi-

In determining adult disability benefit eligibility, however, the ALJ may have to consider two more questions in addition to the above three-part test. C.F.R. §§ 404.1520(e), 416.920(e). If the adult petitioner is not performing substantial gainful work, and his impairment or combination of impairments is found to be severe but does not appear as a regulatory listing, the ALJ must examine whether the impaired claimant retains the residual functional capacity to return to perform his or her past relevant work. If not, the ALJ must finally investigate whether there is other work that the impaired claimant can do, taking into account his or her capacity, age, available jobs, and work experience. 20 C.F.R. § 416.920. *See Plummer v. Appfel,* 186 F.3d 422, 428 (3d Cir.1999). The ALJ in the instant case addressed this latter analysis in his decision. As Petitioner does not dispute those particular findings, this court declines to address them here.

## IV. Discussion

Petitioner has not engaged in substantial gainful activity since his alleged onset date, so step one was resolved in his favor (Record 17). The ALJ found Petitioner's learning disability and sleep apnea to be severe impairments, so step two was also resolved in Petitioner's favor.[4] *Id.* Thus the ALJ was required to determine whether these impairments met or equaled listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. §§ 416.925;

404.1520(d)). The ALJ found that "the evidence fails to establish that the child's impairment(s) meets or medically equals a listed impairment" (Record 18). The ALJ then went on to determine whether Petitioner's impairment(s) functionally equalled any of the listings and satisfied the 12–month requirement. *See supra,* n. 3.

The ALJ's finding that Petitioner's impairment(s) did not functionally equal any listings was based on examining the record for how Petitioner performed in six domains of functioning. These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself (self-care); and (5) health and physical well-being (Record 19–21). 20 C.F.R. § 416.926a(b)(1)(I)-(vi). A child must have "extreme" functional limitations in one domain or "marked" functional limitations in at least two domains to be found disabled.[5] 20 C.F.R. § 416.926(a).

▪ The ALJ found that Petitioner had less than marked limitations in the first and second domains, and no limitations in the remaining domains. The court finds that there is substantial evidence in the record to uphold these findings. While Petitioner does have academic problems, he is able to understand, remember, and carry out instructions relating to household chores (Record 117). Although he has a history of sleep problems, his current sleep apnea treatment has allowed

---

cal or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Social Security Act, § 1614(a)(3)(A), as amended, 42 U.S.C.A. § 1382c(a)(3)(A).

**4.** Petitioner's impairments are considered "severe" within the meaning of 20 C.F.R. § 416.924(c) because the child has more than slight abnormalities and more than minimal functional limitations.

**5.** An "extreme" limitation exists where impairment(s) interferes very seriously with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). A "marked" limitation exists where impairment(s) interferes seriously with that ability, but more moderately than an extreme limitation. *Id.*

him to maintain an appropriate sleep schedule, staying awake in class and completing more of his work (Record 121). Despite some occasionally immature behavior, his school records show that he socializes acceptably with family, friends, teachers and other students. *Id.* Medical reports show that his musculoskeletal and neurological examinations were normal (Record 156). Petitioner has missed a fair amount of school, but all of his absences were unexcused; there is no showing of illness or medical treatment (Record 123). Indeed, Petitioner has never been hospitalized and received medical treatment only for minor conditions such as allergies and dermatitis (Record 126–27, 141).

Because the ALJ did not find the Petitioner to have an extreme limitation in any domain or a marked limitation in any two domains, he held Petitioner "does not functionally equal, singly or in combination, any listed impairment" (Record at 21). Because Petitioner was thus found not to have an impairment or combination of impairments that meets, medically equals or functionally equals any listing, he was found not to be disabled for the purposes of eligibility for SSI, prior to reaching age 18. *Id.* This court concurs.

### A. Petitioner's intelligence tests

■ Petitioner argues in his summary judgment motion that the ALJ should not have relied solely on one intelligence test to determine whether or not Petitioner's impairment(s) met or equaled the stated listings. However, in order to meet a listing, a claimant must show that all of the criteria of that listing are met. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir.1992); 20 C.F.R. 404.1526(a). Section 12.05(C) defines an impairment to include a valid verbal, performance or full scale I.Q. score of 60–69 inclusive, *and* a physical or other mental impairment imposing additional

and significant work-related limitations of function. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(C).

As noted above, Petitioner's IQ scores fell in the mid–70s range. These scores exceed the criteria of Listings 112.05 and 12.05 (Record 18). As such, he failed to meet the listing requirements. Part A of the listing provides that the requirements can be met when there is "mental capacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(A). However, the use of such standardized measures was clearly not precluded in this instance; Petitioner's I.Q. scores exceeded the disability listing level.

In addition, Petitioner offered no other medical evidence to contradict the I.Q. findings. The fact that Petitioner has been enrolled in special education classes throughout his school career does not in and of itself establish sufficient limitation. *See* 20 C.F.R. § 416.924a(b)(7)(iv)("[T]he fact that [Petitioner is] in a special education classroom setting ... will not in itself establish [his] actual limitations or abilities"). Petitioner has not met his burden of showing his condition equaled a listing. *See* 20 C.F.R. § 404.1527(f)(1).

### B. Petitioner's obesity

■ Petitioner also argues that the ALJ did not adequately consider Petitioner's obesity in his evaluation. The ALJ did address the question of Petitioner's obesity in his decision, but found that it was not severe and thus did not limit him. While obesity, in combination with another impairment, may or may not increase the severity of the other impairment (Social Security Ruling 02–01p), the ALJ found that not to be the case for Petitioner, given

his physical capabilities as discussed above (Record 64, 102, 117, 164). This court agrees with the ALJ's finding on the matter.

■ Petitioner further claims that the ALJ failed to give adequate weight to a report from Beth Ann Baxter, MSN, which states that Petitioner has "problems with weight control and has complained for years of persistent daytime hypersomnolence which is now interfering with his daily level of functioning" (Record 156). It is true that the Third Circuit has held that "[t]reating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (citation and punctuation omitted). However, here the report was not issued by a physician, and therefore is not an acceptable medical source. 20 C.F.R. § 416.913(a)(acceptable medical sources are licensed physicians (medical or osteopathic doctors), licenses or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).[6]

Upon review of the medical and educational documents and testimony reproduced in the record, this court finds that the ALJ's decision is supportable by reasonable evidence. This decision of the ALJ is therefore affirmed.

An appropriate Order follows.

### ORDER

**AND NOW,** this 21st day of November, 2005, upon consideration of the parties' cross-motions for summary judgment, it is hereby **ORDERED** that Petitioner's Motion is **DENIED** and Defendant's motion is **GRANTED.** The decision of the Administrative Law Judge is affirmed.

---

**6.** Similarly, the ALJ was not required to address the credibility of Petitioner's parents' testimony. Theirs is not objective expert testimony, nor the opinion of a treating physician.